RAY v. COX, Judge, et al.

No. 5513.   Decided March 19, 1934.   (30 P. [2d] 1062.)

*Wm. B. Higgins,* of Fillmore, for plaintiff.

*Cline, Wilson & Cline,* of Milford, for defendants.

FOLLAND, J.

A writ of certiorari was issued on petition of plaintiff to review an order of the district court of Millard county releasing certain property from attachment in the case of *Mary E. Ray* v. *E. G. Cowling* now pending in that court. The petition alleges that the district judge exceeded his jurisdiction in making an order releasing 20 tons of hay and

840 pounds of alfalfa seed from attachment. It appears from uncontradicted facts that Mary E. Ray leased to E. G. Cowling a farm located in Millard county for the years 1932 and 1933. Cowling paid the rent the first year but not the second. While Cowling was still in possession of the premises Mrs. Ray commenced action for the rent due and unpaid and obtained a writ of attachment under which the sheriff of the county levied and took into posession certain hay, alfalfa seed, and barley raised and harvested by Cowling then on the leased premises. Cowling has no other property or means out of which the judgment for rent could be satisfied. The affidavit for attachment was in the usual form under the attachment statute, but by permission of the court it was amended to indicate it was intended in enforcement of a lessor's lien. Cowling, without posting a redelivery bond, moved the court to release the property from attachment on the ground the property was exempt from execution and attachment. After a hearing limited to the question of whether or not the attached property was exempt, the court released from the attachment 840 pounds of alfalfa seed and 20 tons of hay, leaving the rest of the property taken subject to the writ.

Plaintiff contends this order was made in excess of the court's jurisdiction; that the property released was not exempt; that the court had no authority to release any of the property held under the writ without defendant having first filed bond for such release; and that her lessor's lien is superior to any exemption since the unpaid rent represents the purchase price of the crops which had been attached. She alleged that she had no appeal or other plain, speedy, and adequate remedy in the course of law by which she could have relief.

Defendant filed a demurrer to the petition, and a motion to quash the writ of certiorari on grounds, among others, that the petition does not show that the defendant judge either had no jurisdiction to make the order complained of or exceeded his jurisdiction in so doing; that the petition

on its face shows that the crops attached were exempt from execution and fails to show that plaintiff is entitled to a lessor's lien thereon.

Without waiving the demurrer and motion defendant answered admitting most of the alleged facts but denying that the court exceeded jurisdiction in making the order complained of and alleging that the affidavits and evidence before the court conclusively disclosed that the property in question was exempt from execution and attachment under R. S. 1933, 104-37-13 and 104-37-14. The entire record of proceedings in the cause in the district court has been certified to this court and is now before us.

We shall not undertake to review or pass on all the points raised by the pleadings in this case. It is sufficient to say the writ must be dismissed for the reason it clearly appears from the record that the district court did not act without or in excess of jurisdiction.

It is the office and function of the writ of certiorari to inquire into and review determinations of an inferior tribunal, board, or officer without or in excess of jurisdiction. *Hillyard* v. *District Court of Cache County*, 68 Utah 220, 249 P. 806. The ruling made by the district court in releasing property from attachment is not reviewable by this court on certiorari except to the extent in which jurisdictional questions may be involved. *Griffin Company* v. *Howell*, 38 Utah 357, 113 P. 326.

In many jurisdictions the statutes give landlords a lien for rent on the property of the tenant, and in most states where this is so the statute also gives a lien on crops grown or growing on the leased premises. 2 Tiffany Landlord and Tenant 1915; note 9 A. L. R. 305. Some cases hold the landlord's lien, in absence of statutory provisions to the contrary, attaches to such property notwithstanding it may be exempt from execution. Note 9 A. L. R. 310. This rule, however, does not apply in this state for the reason the statute which grants the lien in favor of lessors restricts or limits the lien to nonexempt property

of the lessee brought or kept upon the leased premises. The statute is as follows:

"Except as hereinafter provided, lessors shall have a lien for rent due upon all non-exempt property of the lessee brought or kept upon the leased premises so long as the lessee shall occupy said premises and for thirty days thereafter." R. S. Utah 1933, 52-3-1.

Plaintiff did not see fit to protect herself in this respect when the lease was written for there is no provision therein which subjects the grown or growing crops to the payment of the rent. No doubt this could have been done had the parties to the lease so desired. 2 Tiffany Landlord and Tenant 1964; 36 C. J. 479.

It is not disputed that Cowling is a farmer, head of a family, and that the alfalfa seed and hay released from attachment is exempt within the provisions of R. S. Utah 1933, 104-37-13 and 104-37-14, if, as a matter of law, such exemption may be asserted as against a landlord claiming the statutory lessor's lien. Plaintiff contends the rental of the premises is in the nature of the purchase price of crops raised thereon, and that because of R. S. Utah 1933, 104-37-16 the statutory exemptions cannot be asserted by the lessee in the face of a claimed lien by the landlord on the crops raised on the premises. This section reads as follows:

"No article or species of property mentioned in this chapter or in the title Homesteads is exempt from execution issued upon a judgment recovered for its purchase price, or any portion thereof, or upon a judgment on foreclosure of a mortgage or other valid lien thereon, nor exempt from sale for taxes. None of such exemptions are for the benefit of nonresidents or persons about to depart from this state with the intention of removing their effects therefrom, but their property is liable to execution with the exception of ordinary wearing apparel."

In view of the explicit language by which the lessor's lien is provided we cannot see wherein this section makes property, otherwise, by the statute, exempt from execution, non-exempt for the purpose of conferring a lien in favor of the

landlord. The statute gives the lien on nonexempt property only. If it had been intended by the legislature to provide a lien for rent on grown crops otherwise exempt, certainly such intention could have been expressed in a few appropriate words.

Plaintiff's argument is likewise unsound wherein she contends the court acted in excess of jurisdiction in entertaining the motion to release the exempt property from attachment without bond having first been given and filed by defendant under the provisions of R. S. Utah 1933, 52-3-7. The bond provided in this section is that specified in R. S. 1933, 104-18-22. It is apparent from the nature of the obligations of the bond referred to that it operates on property of the debtor which is subject to attachment. The writ issued directed the sheriff to "attach and safely keep all the property of the said defendant E. G. Cowling within your jurisdiction, not exempt from execution or so much thereof as may be sufficient" etc. Any such property so attached and taken by the officer may be released to the defendant on the giving of the bond referred to in R. S. 1933, 52-3-7 and 104-18-22, supra. The obligation of the statutory bond is that in the event of judgment in favor of plaintiff in the action the "defendant will, on demand, deliver the attached property so released to the proper officer, to be applied to the payment of the judgment, or in default thereof, that the defendant and sureties will, on demand, pay to the plaintiff the full value of the property released." This does not necessarily refer to exempt property which may have been wrongfully attached by the sheriff. If such a bond were given, the question of exemption would be deferred to some other motion or action to be made or taken by the defendant.

True there is no express provision of the statute authorizing the court to release exempt property when such has been wrongfully attached by the officer under the writ, but the courts are not without power to order release of such property in proper cases. In *Holmes* v. *Marshall*, 145

Cal. 777, 79 P. 534, 537, 69 L. R. A. 67, 104 Am. St. Rep. 86, 2 Ann. Cas. 88, the California court, in releasing exempt proceeds of a life insurance policy from attachment on motion of defendant, said:

"Section 556, Code Civ. Proc., provides that the writ may be discharged when the same was improperly or irregularly issued. This was not a dissolution of the writ of attachment, but an order setting aside the levy as to the exempt property. It would be strange if a court were so impotent that it could not set aside the erroneous levy of its own writ upon exempt property. Any other rule would compel the injured party to bring a suit for damages, which not only would lead to delay, but might in the end prove futile. Courts have power over their own process, and to set aside a levy of a writ of attachment or execution upon exempt property. Freeman on Executions, § 271; Enc. Pl. & Pr., vol. 8, p. 579, and cases cited; *Sandburg* v. *Papineau,* 81 Ill. 446."

The Kansas court in *Wamego State Bank* v. *Sesler,* 113 Kan. 656, 216 P. 274, 75, announced this rule:

"Where exempt property has been seized, under an order of attachment, and such fact has been properly brought to the notice of the court, a motion to discharge such property, on the ground that it was so exempt, authorizes the court to adjudge that the same be so discharged. *Urquhart* v. *Smith,* 5 Kan. 447; *Rullman* v. *Hulse,* supra (33 Kan. 670, 7 P. 210)."

This court has recognized the right of a third party to intervene in an action and on proper pleadings obtain a release from attachment of property owned by him. *Houston Real Estate Inv. Co.* v. *Hechler,* 44 Utah 64, 138 P. 1159; *Grover* v. *Cash,* 69 Utah 194, 253 P. 676, and has held that the Code itself did not furnish a complete remedy with respect to property wrongfully attached. *Woolley* v. *Maynes-Wells Co.,* 15 Utah 341, 49 P. 647. In the *Woolley Case* the court said, by way of illustration:

"That the legislature did not intend to provide a complete method of procedure therein is evidenced by the fact that the act nowhere provides for the discharge of the attachment in any case where the writ was irregularly or improperly issued. Would counsel undertake to maintain the position that, because of the failure of the legislature to so provide therein, the courts have no power to discharge the writ

in such cases? Or in case the property levied upon and seized under the writ afterwards turned out to be property exempt from execution, or, if not so exempt, it became apparent that the affidavit on which the attachment proceeding was based was absolutely without foundation in fact. In either of such cases, could it be seriously insisted that the court would be powerless to discharge the writ, because there is no provision therefor in the act?"

See, also, *Hewlett Brothers* v. *Mallet*, 39 Utah 357, 117 P. 68.

The writ of certiorari having been improvidently issued is dismissed, and the records transmitted to this court are remitted to the court below. Costs to defendant.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.